**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Jose Gonzalez-Fadraga,<br><br>Petitioner<br>v.<br><br>Todd Blanche, et al.,<br><br>Respondents | Case No.: 2:26-cv-02607-JAD-MDC<br><br>**Order Granting Habeas Petition in Part and Closing Case**<br><br>[ECF No. 10] |

Jose Gonzalez-Fadraga is a Cuban citizen who was ordered removed from the United States in 2019. He was held for three months and then released under an order of supervision when Immigration and Customs Enforcement (ICE) officials could not effectuate his removal. Gonzalez-Fadraga was rearrested in 2025 and detained for about four months before he was removed to Mexico. He was arrested again for unlawfully reentering the United States in early 2026, and after misdemeanor proceedings for unlawful entry, he was placed in immigration custody for removal on August 11, 2026.

Gonzalez-Fadraga seeks a writ of habeas corpus, contending that his detention violated the principles articulated in *Zadvydas v. Davis*[1] and that his likely removal to a third country violates his due-process rights. I grant Gonzalez-Fadraga's petition in part. I find that reinstatement of the removal order following Gonzalez-Fadraga's reentry resets the removal period, so his detention still falls within the 90-day mandatory-detention period in 8 U.S.C. § 1231(a)(2)(A), so I deny relief on his *Zadvydas* claim. But I find that the government's third-country-removal policy likely violates due process, so I order that it provide Gonzalez-Fadraga

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

with notice and a meaningful opportunity to contest his removal before removing him to a third country.

## Background

Petitioner Jose Gonzalez-Fadraga is a Cuban citizen who came to the United States in 2015.[2] He was ordered removed to Cuba on April 2, 2019, but he was released from custody approximately three months later under an order of supervision because ICE officials could not effectuate his removal.[3] Gonzalez-Fadraga was deported to Mexico on December 10, 2025.[4] When he was encountered reentering the U.S. on March 11, 2026, he was charged with unlawful entry and was eventually taken into ICE custody on August 11, 2026.[5]

## Discussion

### A. This court has habeas jurisdiction over Gonzalez-Fadraga's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[6] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[7]

---

[2] ECF No. 10-2 at 9.

[3] *Id.* at 10.

[4] *Id.*

[5] *Id.* at 9–10.

[6] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2).

[7] *Zadvydas v. Davis*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Gonzalez-Fadraga has not shown that he is entitled to relief on his prolonged-detention claim.**

***1. The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[8] During that 90-day period, detention is mandatory.[9] The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible; removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[10] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[11] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[12]

---

[8] 8 U.S.C. § 1231(a)(1)(B).

[9] 8 U.S.C. § 1231(a)(2)(A).

[10] *Zadvydas*, 533 U.S. at 682.

[11] 8 U.S.C. § 1231(a)(6).

[12] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

### *2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[13] To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[14] It determined that six months of post-removal-period detention is presumptively reasonable.[15] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[16] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[17] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[18]

---

[13] *Id.* at 690.

[14] *Id.* at 699.

[15] *Id.* at 701.

[16] *Id.*

[17] *Id.*

[18] *Id.* (cleaned up).

### *3. Gonzalez-Fadraga's detention falls within the mandatory 90-day detention period, so his Zadvydas and prolonged-detention claim fails.*

Gonzalez-Fadraga contends that he has been detained under his final order of removal for more than seven months and that there is no reasonable likelihood that he will be removed in the reasonably foreseeable future. He includes his detention periods before he was removed to Mexico in 2025 in that calculus. The government contends that those periods don't count because he reentered the country in March 2026 and the reinstatement of his removal order resets the removal-period clock under 8 U.S.C. § 1231.

The Ninth Circuit has not yet considered the question of whether the removal-period clock restarts when a removal order is reinstated after a noncitizen unlawfully reenters the United States. But I am persuaded by out-of-circuit decisions finding that it does. "Courts have generally treated the reinstated removal order as a new removal order for purposes of calculation of the removal period under 8 U.S.C. § 1231(b)(1)(B)."[19] Though a prior order of removal "is reinstated from its original date and is not subject to being reopened or reviewed,"[20] it does not follow that the removal period under a reinstated order must also run from that original date. The Ninth Circuit has held that a "reinstated removal order is administratively final"[21] under § 1231(a)(b)(i), so the reinstated order would trigger anew § 1231's mandatory removal period. This situation is distinguishable from cases in which this court has considered the cumulative

---

[19] *Barahona-Pineda v. Guadian*, 2026 WL 2413605, at *5 (E.D. Virg. Aug. 18, 2026) (quoting *Garcia Uranga v. Barr*, 2020 WL 4334999, at *5 (D. Kan. July 28, 2020)); *accord. Morales v. Sessions*, 2018 WL 3732670, at *4 (E.D. Ky. Aug. 6, 2018); *Rodriguez-Carabantes v. Chertoff*, 2007 WL 1268500, at *2 (W.D. Wash. May 1, 2007); *Venegas v. Smith*, 179 F. Supp. 2d 1205, 1208 (D. Or. 2001).

[20] *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017) (quoting 8 U.S.C. § 1231(a)(5)).

[21] *Id.*

effect of different detention periods under the same removal order. In those cases, the petitioner was detained, released, and re-detained under the same removal order and without any intervening removal, reentry, and reinstatement. The calculus shifts significantly when an intervening cause—like illegal reentry—would require the government to detain the petitioner anew.

This is the only outcome that makes sense. The government effectively closed off Gonzalez-Fadraga's previous removal period when it successfully removed him. His illegal reentry requires the government to repeat the process of removing him. If I were to adopt Gonzalez-Fadraga's argument that the removal period doesn't reset upon reinstatement, the government would never be able to detain a noncitizen who illegally reentered the country if he was held for six months before his first removal. The statute and common sense do not dictate this result.

So I conclude that Gonzalez-Fadraga's removal period reset when his removal order was reinstated on August 11, 2026, and he has thus only been in custody for 57 days. That duration is well within the 90-day mandatory-removal period set forth in § 1231(a). So I cannot conclude that Gonzalez-Fadraga has been held in prolonged detention or that his detention violates *Zadvydas*, and I deny his petition on those claims.[22]

[22] For similar reasons, I deny Gonzalez-Fadraga relief on his argument that the government arrested him upon reentry without properly invoking the 2019 order of supervision. It is nonsensical to insist that his supervision order survived his 2025 removal, since supervision orders are meant to secure compliance pending that removal.

**C. Gonzalez-Fadraga has shown that he may be subject to third-country-removal procedures that violate due process.**

***1. The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.***

Once it has been determined that a noncitizen will be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which the [noncitizen] wants to be removed."[23] If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[24] If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[25] Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-country removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[26] And the Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured. Normally, a noncitizen raises CAT

---

[23] 8 U.S.C. § 1231(b)(2)(A).

[24] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[25] 8 U.S.C. § 1231(b)(2)(E)(vii).

[26] 8 U.S.C. § 1231(b)(3)(A).

protections at or directly following his initial removal proceedings. It appears that no immigration statute or regulation addresses how a noncitizen may raise a CAT challenge after ICE determines that removal to the country on his removal order is impracticable and instead chooses a third country to deport him to.

In early 2025, ICE tried to fill that statutory gap. It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the State Department, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[27] In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[28] ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[29]

After the notice of removal is served, the ICE officer "will not affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[30] If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be

---

[27] ECF No. 10-5.

[28] *Id.*

[29] *Id.*

[30] *Id.*

persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[31] If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT from removal to the third country.[32]

#### *2. ICE's third-country policy violates due process, so any attempt to remove Gonzalez-Fadraga to a third country must be preceded by notice and a meaningful opportunity to be heard.*

Gonzalez-Fadraga contends that ICE's third-country policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause. "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[33] The "fundamental features of due process" are notice and an opportunity to be heard.[34]

The Ninth Circuit has not expressly decided what process is due to noncitizens faced with third-country removal, but it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[35] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the

---

[31] *Id.*

[32] *Id.*

[33] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[34] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[35] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

constitutional right to due process."[36] And in the unpublished case *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[37]

District courts have extrapolated these holdings to conclude that adequate due process of a third-country removal requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) if the answer is yes, "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts," and (4) provide "adequate time to prepare and file a motion to reopen[.]"[38] Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[39] District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[40]

---

[36] *Id.*

[37] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (cleaned up).

[38] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d, 703, 727 (W.D. Wash. 2025).

[39] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country, citing *Andriasian*).

[40] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide due process to a noncitizen who may be removed to that country. Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation. ICE's second scheme doesn't fare much better. Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country. Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless an ICE officer determines, through an unexplained process, that he would be likely to prove that any of those protections applies. So this process does not comport with the fundamental requirements of due process.

I also find that Gonzalez-Fadraga is likely to face a due-process violation from this policy. The government has already deported him to Mexico once, and it appears that it intends to do so again. I thus conclude that the government must give Gonzalez-Fadraga meaningful notice and an opportunity to raise fear-based claims related to his third-country removal before any such removal is attempted.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Jose Gonzalez-Fadraga's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 10] is GRANTED in part**. **The federal respondents are enjoined from removing Jose Gonzalez-Fadraga to a third country unless it first complies with the notice-and-hearing requirements detailed in this order**. The petition is DENIED in all other respects.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to **CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
October 8, 2026